USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/27/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D.H. BLAIR & CO., INC., et al.,

                Petitioners,

    v.

ERNEST GOTTDIENER, et al.,

                Respondents.

03 Civ. 2908 (RO)

**Memorandum Opinion and Order**

RICHARD OWEN, United States District Judge:

This action concerns an arbitration of securities fraud claims which was decided by a panel of the National Association of Securities Dealers ("NASD") in Florida in January 2003. In the arbitration, Respondents Ernest Gottdiener, Judit Gottdiener, Ervin Tausky, and Suan Investments (collectively, "Investors") sought relief from Petitioners D.H. Blair & Co., Inc., Kenton E. Wood, (collectively, "Brokers"), D.H. Blair Investment Banking Corp., J. Morton Davis Investment Banking, and Alfred Palagonia for losses sustained as the result of alleged stock fraud and market manipulation. In re Gottdiener v. Prudential Sec. Inc., No. 00-02128, 2003 WL 451820, at *3 (N.A.S.D. Jan. 29, 2003). The NASD panel awarded Investors *inter alia* attorneys' fees, costs, and compensatory and punitive damages with respect to Brokers and Palagonia, but dismissed all claims against D.H. Blair Investment Banking Corp. and J. Morton Davis Investment Banking. Id. at *5. The Court confirmed the award to Investors and entered judgment, reserving jurisdiction to determine entitlement and amount of attorneys' fees and costs, on July 31, 2007 (Docket Entry No. 50), and Investors commenced collection proceedings. Investors

have since settled with Brokers. The only issues before the Court are Investors' Motions for attorneys' fees and costs against Palagonia. Palagonia has not opposed Investors' Motions. For the following reasons, Investors' Motions for attorneys' fees and costs are GRANTED in the amounts indicated.

**Jurisdiction**

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**Background and Procedural History**

The Court assumes familiarity with the facts of the case, given an earlier appeal and detailed opinion issued by the Court of Appeals. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006). Investors opened securities accounts and signed account agreements with D.H. Blair & Co., Inc. in New York. Id. at 100. In the account agreements Investors and Brokers agreed to resolve disputes by arbitration and to have arbitration awards entered by any state or federal court with competent jurisdiction. Id. The parties also specifically consented to the jurisdiction of the state and federal courts in New York City for enforcement of any arbitration awards, id., and that "[t]his agreement and its enforcement shall be governed by the laws of the State of New York" (Decl. Jay R. Fialkoff Exs. A-E ¶ 4).

On May 22, 2000 Investors filed a statement of claim with the NASD, alleging *inter alia* that Brokers and the other Petitioners violated Florida Statute Annotated § 517.301. Id. at 100-101. In September and October 2002 the parties participated in an

2

arbitration before an NASD panel in Florida, id. at 101, although Palagonia failed to attend or to submit any filings in response to Investor's statement of claim, In re Gottdiener, 2003 WL 451820 at *2-3. On January 29, 2003 the arbitration panel awarded Investors $255,000 in compensatory damages and $450,000 in punitive damages, including prejudgment interest on both amounts "until the date the Award is paid in full." Id. at 101 (internal quotation marks omitted).

Investors and Brokers both disputed the award in part and a complex series of procedural moves ensued. See id. On April 11, 2003, Brokers filed a "Notice of Petition and Petition to Confirm in Part and Vacate in Part an Arbitration Award" (the "New York Petition") in New York County Supreme Court, in which they moved for confirmation of the award in full, except for the award of prejudgment interest on the punitive damages. Id. On April 25, 2003 Investors removed the New York Petition to this Court. Id. On April 29, 2003, Investors filed in Florida state court a "Petition to Partially Vacate/Confirm Arbitration Award and to Determine Prejudgment Interest, Attorney's Fees and for Other Relief" (the "Florida Petition"). Id. at 102. In the Florida Petition Investors (1) claimed that the arbitrators manifestly disregard the law because they specifically found a violation of § 517.301 but failed to award full statutory damages as directed by Florida Statute Annotated § 517.211; (2) sought confirmation of the rest of the award; and (3) requested calculation of attorneys' fees, which the arbitrators had deferred in their initial award. Id. Brokers removed the Florida Petition to the Southern District of Florida on May 30, 2003. Id.

On June 4, 2003, Brokers successfully obtained a certificate of default from the Clerk in this Court based on Investors' failure to respond to the New York Petition. Id. at

3

101, 108.  Brokers moved the next day for a default judgment in this Court on the same

basis.  Id. at 102.  Brokers answered the Florida Petition on June 6, 2003, and on July 11,

2003 they moved to stay the Florida action pending this Court's ruling on the New York

Petition, or alternately to transfer the Florida action to this Court.  Id.  On June 17, 2003,

Investors filed in this Court an "Opposition to Entry of Default Judgment, Cross Motion

to Vacate Default, and Cross Motion to Dismiss or Transfer."  Id.

On August 20, 2003 this Court denied Investors' Motion to vacate the default

judgment, confirming the award in part but vacating the award of prejudgment interest on

the punitive damages.  Id.  On August 29, 2003 the Southern District of Florida

transferred the Florida Petition to this Court, and on September 2, 2003 the Investors filed

a "Motion to Alter or Amend" the default judgment.  Id. at 102-03.  The Court rejected

this Motion on May 7, 2004.  Id. at 103.

Investors subsequently appealed this Court's rulings to the Court of Appeals,

seeking to breathe "life into their own motion to vacate the arbitral award, which was

filed in the Southern District of Florida . . . and transferred to" this Court.  Id. at 100.  On

September 5, 2006 the Court of Appeals found that the New York Petition—in which

Brokers moved to confirm the arbitration award except for the award of prejudgment

interest on the punitive damages—should be treated as unopposed other than the award of

prejudgment interest on the punitive damages.  Id. at 110.  The Court of Appeals

concluded that "the arbitration award should have been confirmed in full," including

prejudgment interest on the punitive damages.  Id. at 112-13.  The Court of Appeals also

decided that the claims raised in the Florida Petition were barred by *res judicata*.  Id. at

112.  The Court of Appeals remanded the case "for dismissal of the pending Florida

Petition." Id. at 113. On remand, this Court held that "the arbitration award . . . is confirmed in full, and the pending case . . . transferred to me from the Southern District of Florida is dismissed. The respondent' two Motions for Attorneys' Fees are now before me." Id., *remanded to* Nos. 03 Civ. 2908, 04 Civ. 5664, 2007 WL 259931, at *1 (S.D.N.Y. Jan. 29, 2007).

**Discussion**

I.     **Investors' Entitlement to Attorneys' Fees and Costs in Connection with the Arbitration and Post-Arbitration Proceedings**

As discussed *supra*, the only remaining issue is whether Investors may recover attorneys' fees and costs from Palagonia.[1] The arbitrators held that "[c]laimants' requests for costs and attorneys' fees are deferred to a court of competent jurisdiction for final determination."[2] In re Gottdiener, 2003 WL 451820, at *5. Palagonia has failed respond to Investors' Motions for fees and costs in this action or to any other filing by Investors. Brokers, before settling with Investors, did oppose Investors' Motions for fees and costs, and the Court has considered the merits of the arguments made by both of these parties.[3] The Court concludes that Investors are entitled to attorneys' fees and costs.

Brokers argue that the Court of Appeals' ruling that the Florida Petition was barred by *res judicata* bars Investors' Motions for attorneys' fees, because in the Florida Petition Investors sought a calculation of attorneys' fees and costs. (Pet'rs' Mem. Law

---

[1] Investors filed a Motion for Attorney's Fees and Costs in March 2004 (Docket Entry No. 28), and a Motion for Post Arbitration Attorney's Fees and Costs in October 2006 (Docket Entry No. 40).

[2] Arbitrators in Florida lack the authority to award attorneys' fees and instead must refer such awards to courts of competent jurisdiction. Kirchner v. Interfirst Capital Corp., 732 So.2d 482, 483 (Fla. 5th Dist. Ct. App. 1999).

[3] For ease of reference the Court refers to Brokers' arguments throughout this opinion in the present tense.

5

Opp'n Resp'ts' Mots. Att'ys' Fees Costs Arb. Post-Arb. Rep., Supp. Pet'rs' Req. Limited

Disc. Relating Mots. ("Brokers' Mem. Law") 10.)  Investors argue in response that the

Court must award it fees and costs because: (1) the Court of Appeals confirmed the

arbitration award in full; (2) the arbitration panel based their decision on a statute that

requires the award of attorneys' fees, but they deferred a determination of the award of

attorneys' fees and costs because only a court of competent jurisdiction can make these

awards; (3) this Court has jurisdiction to determine fees and costs; and (4) in the New

York Petition Brokers did not even seek to vacate the award of attorneys' fees.  (Arb.

Claimants' Reply Mem. Law Supp. Arb. Claimants' Mots. Att'y's Fees Costs Arb. Post-

Arb. Repr'n Supp. Arb. Claimants' Req. Limited Disc. ("Investors' Reply Mem. Law")

3-5.)

The Court agrees with Investors.  "In the New York Petition, Broker[s] argued

that the award should be confirmed, except for the portion that awarded prejudgment

interest on punitive damages."  D.H. Blair & Co., Inc., 462 F.3d at 101.  As noted *supra*,

the award that Brokers themselves sought to confirm included an award of costs and

attorneys' fees.  See In re Gottdiener, 2003 WL 451820, at *5.  As the Court of Appeals

recognized, "the calculation of attorney's fees . . . had been deferred by the arbitrators."

D.H. Blair & Co., Inc., 462 F.3d at 102.  Thus the fact that the Florida Petition sought a

calculation of costs and attorneys' fees and that it has been barred by *res judicata* has no

bearing on this Court's authority to award fees and costs.  Indeed the Court of Appeals

decided that the arbitration award should be confirmed in full.  Id. at 112.  The Court of

Appeals did not discuss the issue of attorneys' fees or costs at all, and it only discussed

6

the issue of *res judicata* as applied to the Florida Petition in terms of Investors' claim that

the arbitrators awarded an improper amount of compensatory damages. See id.

> Confirmation of an arbitration award normally is
>
> a summary proceeding that merely makes what is already a final
> arbitration award a judgment of the court, and the court must grant the
> award unless the award is vacated, modified, or corrected . . . Only a
> barely colorable justification for the outcome reached by the arbitrators is
> necessary to confirm the award. A party moving to vacate an arbitration
> award has the burden of proof, and the showing required to avoid
> confirmation is very high.

D.H. Blair & Co., Inc., 462 F.3d at 110 (internal citations and quotation marks omitted).

The arbitrators found that Brokers and Palagonia were liable to Investors pursuant to,

*inter alia*, § 517.301. In re Gottdiener, 2003 WL 451820, at *5. Under Florida Statute

Annotated § 517.312, any purchaser of a security sold in violation of § 517.301 may

recover damages as provided in § 517.211(6), which provides that "the court shall award

reasonable attorneys' fees to the prevailing party unless the court finds that the award of

such fees would be unjust."

Accordingly, the Court concludes that Investors are entitled to fees and costs

relating to the arbitration. See Liberty Sec. Corp. v. Fetcho, 114 F. Supp. 2d 1319, 1323-

24 (S.D. Fla. 2000) (confirming arbitration award of costs and fees made pursuant to §

517.211); Moser v. Barron Chase, 783 So.2d 231, 236-37 (Fla.2001) (courts have

authority to award attorneys' fees where award was based on a statute that provides for

attorneys' fees) (citing § 517.211(6)). Investors are also entitled to attorneys' fees and

costs associated with their efforts to enforce the award, including the appeal before the

Court of Appeals. See D.H. Blair & Co., Inc. v. Johnson., 697 So.2d 912, 914 (Fla. 4th

Dist. Ct. App. 1997) (awarding attorneys' fees incurred during litigating entitlement to

such fees) (citing State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830 (Fla.1993));

McDaniel v. Berhalter, 405 So.2d 1027, 1031 (Fla. 4th Dist. Ct. App. 1981) (court may

award costs incurred in confirming arbitration award).


## II.    The Amount of Attorneys' Fees

Florida state law controls the Court's determination of attorneys' fees and costs.

See Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 517-518 (2d cir. 1991) (affirming

partial confirmation of arbitration award and noting that where state law provides the

basis of decision, propriety and amount of award depends on state law).  The first step in

determining attorneys' fees in Florida is applying the lodestar method—determining "the

number of hours reasonably expended on the litigation . . . [and then] determ[ining] a

reasonable hourly rate for the services of the prevailing party's attorney." Fla. Patient's

Comp. Fund v. Rowe, 472 So.2d 1145, 1150 (Fla.1985).  Second, the Court must

determine whether the lodestar amount should be multiplied because Investors' attorneys

brought the case on a contingency basis. Standard Guar. Ins. Co. v. Quanstrom, 555

So.2d 828, 833-35 (Fla.1990).[4]

In determining reasonable attorneys' fees the Court should also consider several

factors:

---

[4] The factors that are relevant to this determination depend on which of three types of cases a case is classified: "(1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters." Quanstrom, 555 So.2d at 833.  While the court in Quanstrom did not intend for these categories to be all-inclusive, id., there is disagreement in Florida whether cases involving violations of § 517.301 fall into the first or second category. See, e.g., Olde Disc. Corp. v. Amsel, 800 So.2d 667, 668 (Fla. 5th Dist. Ct. App. 2001) (Pleus, J., concurring) (opining that § 517.301 relates to public policy enforcement cases); Raymond, James & Assocs., Inc. v. Wieneke, 591 So.2d 956, 958 (Fla. 2d Dist. Ct. App. 1991) (finding that § 517.301 claims fall into the second category of cases).  In this case, Investors other than Palagonia and Brokers both assumed, without discussing, that § 517.301 falls into the second category.  Therefore the Court also construes § 517.301 as falling into the second category and will conduct its analysis accordingly.

> (1) The time and labor required, the novelty and difficulty of the question
> involved, and the skill requisite to perform the legal service properly[;]
> (2) The likelihood, if apparent to the client, that the acceptance of the
> particular employment will preclude other employment by the lawyer[;]
> (3) The fee customarily charged in the locality for similar legal services[;]
> (4) The amount involved and the results obtained[;] (5) The time
> limitations imposed by the client or by the circumstances[;] (6) The nature
> and length of the professional relationship with the client[;] (7) The
> experience, reputation, and ability of the lawyer or lawyers performing the
> services[; and] (8) Whether the fee is fixed or contingent

Rowe, 472 So.2d at 1150 n.6.  In addition to these factors, the Court notes that

Palagonia did not appear at the arbitration or in subsequent proceedings to

confirm the award, and that he has not opposed Investors' Motions for attorneys'

fees.

### a.      The Number of Hours Reasonably Expended on the Litigation

Brokers make several arguments regarding the time spent by Investors litigating

this case.  First, they note that Investors should not receive attorneys' fees for time spent

litigating their unsuccessful claims against D.H. Blair Investment Banking Corp. and J.

Morton Davis Investment Banking, and that these claims did not overlap with Investors'

other claims.  (Brokers' Mem. Law 19.)  Investors allege that these parties were named as

respondents in the arbitration because of their participation in the scheme perpetrated by

the other Brokers, to mitigate the risk of non-payment of an award, that their alleged

liability was predicated on the same proof used against the other Brokers, and that very

little time was spent preparing for and litigating against these parties.  (Investors' Reply

Mem. Law 9.)  The Court concludes that attorneys' fees may be recovered for these

unsuccessful claims because Investors have adequately shown that these claims were

9

intertwined with their successful claims.  See Nat'l Portland Cement Co. v. Goudie, 718

So.2d 274, 275 (Fla. 2d Dist. Ct. App. 1998) (internal citations omitted).

Second, Brokers argue that Investors cannot recover fees based on the common

law claims it asserted at the arbitration because unlike § 517.301, these claims do not

provide for attorneys' fees.  (Brokers' Mem. Law 23.)  Brokers contend that Investors'

billing records do not sufficiently distinguish between the amount of time spent on these

two sets of claims, and therefore Investors' fees should be reduced to reflect the

comparative difficulty of prevailing on these claims.  A "party seeking fees has the

burden to allocate them to the issues for which fees are awardable or to show that the

issues were so intertwined that allocation is not feasible."  Crown Custom Homes, Inc. v.

Sabatino, 18 So.3d 738, 740 (Fla. 4th Dist. Ct. App. 2009) (internal citations and

quotation marks omitted).  The Court is satisfied that Investors have shown that "[a]s a

practical matter, the same evidence for fraud supports a legal argument for the finding of

negligence, breach of fiduciary duty and a 517 violation."  (Investors' Reply Mem. Law

10.)  Accordingly, the Court declines to reduce the fee award on this basis.

Third, Brokers argue that Investors' attorneys billed excessive and unnecessary

amounts of time and their billing records were insufficiently detailed.  Brokers allege that

in preparation for and during the arbitration Investors repeatedly billed time for

"reviewing the file" and for researching the same issues.  (Brokers' Mem. Law 21.)

Contrary to Brokers' allegations, however, not all of the billing entries they cite actually

state that Investors' attorneys were simply "reviewing the file," and where this statement

does appear it is accompanied by additional language detailing the work done by

Investors' attorneys.  The instances cited by Brokers in which Investors' attorneys billed

for duplicative research are minimal and frequently are grouped together with descriptions of other tasks. Investors' attorneys, however, generally block-billed their work both before, during, and after the arbitration, such that several tasks are grouped together under one time entry, thereby preventing the Court from properly evaluating the reasonableness of the time spent on each task. (See Brokers' Mem. Law 25-26 nn. 16-20.) Accordingly, the Court finds that the amount of hours spent by Investors' attorneys preparing for and litigating the arbitration should be reduced by 10%. See Haines v. Sophia, 711 So.2d 209, 211 (Fla. 4th Dist. Ct. App. 1998) ("Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee. . . . Inadequate documentation may result in a reduction in the number of hours claimed . . . .") (internal citations and quotation marks omitted); see also Pyatt v. Jean, No. 04 Civ. 3098, 2010 WL 3322501, at *5 (E.D.N.Y. Aug. 17, 2010) ("The Court may reduce a fee award for block billing because it reduces the ability to determine activities' reasonableness.") (internal citations omitted). Investors claim 673.83 hours billed by its attorney, Mark A. Tepper, before and during the arbitration, which the Court reduces by 67 hours for a total of 606.83 hours.

Brokers also argue that most of Investors' work completed after the arbitration was unnecessary—that Investors should not have removed the New York Petition to this Court, that Investors should not have filed the Florida Petition, and that most of their appeal to the Court of Appeals was unnecessary. The Court rejects this argument because it declines to second-guess Investors' litigation strategy, and because the Court of Appeals decided several unclear issues of law. See, e.g., D.H. Blair & Co., Inc., 462

11

F.3d at 107 ("We agree with the Investors that Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award.").

Nevertheless, the Court does find that the amount of time billed by Tepper after the arbitration should be reduced for two reasons: Tepper block-billed all of this time and he spent an unreasonable amount of time litigating the appeal to the Court of Appeals. He billed about 165 hours preparing an appeal brief to the Court of Appeals between June 2, 2004 and August 23, 2004, including about 110 hours between August 5, 2004 and August 23, 2004 alone. Descriptions for the work completed by Tepper during this period in August 2004 consist of near-verbatim versions of "Reviewing file; Research; Drafting documents: Appellants' brief." (Arb. Claimants' Notice Mot. Post Arb. Att'y's Fees Costs Period June 7, 2003 to Oct. 12, 2006 Ex. 1 at 12-13.) This time is in addition to about 45 hours preparing a reply brief, about 19 hours traveling to and from New York and arguing the appeal, and about 19 hours after the appeal.[5] (Id. Ex. 1 at 13-14.) These amounts of time—253.38 hours cumulatively—were excessive, especially considering that many of the issues were briefed in earlier motions, and some portion of this work undoubtedly could have been performed by an associate at a lower rate. Tepper also claims 192.49 hours billed before the appeal but after the arbitration, for a combined total of 445.87 hours. In light of the block-billed nature of the time entries and the excessive amount of time spent on appeal, the Court concludes that the total amount of hours claimed after the arbitration should be reduced by 15%, rounded down to 66.87 hours, and that the amount of time reasonably spent litigating this case after the arbitration was

---

[5] The billing records supplied by Tepper show time billed by an associate: 11.2 hours on the appeal brief, 3.6 hours on the reply brief, and 1 hour after the appeal. Tepper has not, however, requested fees for the time billed by the associate, and accordingly the Court has not included these hours in its calculations and will not award fees for this work.

therefore 379 hours.  Adding 379 hours to the amount of hours reasonably spent

preparing for and litigating the arbitration, 606.83 hours, **the total amount of attorney**

**hours reasonably spent litigating this case was 985.83 hours.**  Tepper has also claimed

paralegal fees for 86.52 hours in connection with the arbitration and 15.8 hours after the

arbitration, for a total of 102.32 hours.  See State Farm Mut. Auto Ins. Co. v. Edge

Family Chiropractic, P.A., 41 So.3d 293, 295 (Fla. 1st Dist. Ct. App. 2010) (stating that

when awarding attorneys' fees courts shall consider time spent by legal assistants)

(internal citation omitted).  The Court finds that this amount should be reduced by 15%,

rounded down to 15.32 hours, such that **the total amount of paralegal hours**

**reasonably spent on this case was 87 hours.**


### b.   *Rowe* Factors

Brokers contend that the number of hours billed by Investors' attorneys should be

reduced based on the results obtained.  They note that Investors obtained only a small

portion of the damages they sought,[6] this amount was less than a settlement offer,

Investors did not prevail entirely before the Court of Appeals, and they failed to prove

liability against all of Respondents.  The Court rejects these arguments.  Investors won a

significant amount of damages and successfully appealed this Court's denial of their

claim for interest on punitive damages, one of the main issues on appeal.

---

[6] In their statement of claim, Investors sought $2,100,000 in compensatory damages, $5,000,000 in
commissions received by Respondents, $21,300,000 in punitive damages, interest, costs, and attorneys'
fees.  In re Gottdiener, 2003 WL 451820, at *3.  The arbitration panel awarded Investors $255,000 in
compensatory damages, $450,000 in punitive damages, prejudgment interest on both amounts, $600 for the
NASD filing fee, attorneys' fees, and costs.  Id. at *5.

### c.      The Reasonable Hourly Rate

"The second half of the equation, which encompasses many aspects of the representation, requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney.  In establishing this hourly rate, the court should . . . take into account all of the . . . factors [relevant to the first half of the equation] except the time and labor required, the novelty and difficulty of the question involved, the results obtained, and [w]hether the fee is fixed or contingent." Rowe, 472 So.2d at 1150-51 (internal quotation marks omitted) (second alteration in the original).

The Court finds that the rate for attorneys claimed by Investors, $300 per hour, is a reasonable rate.  Case law supports this finding, and Tepper has also submitted affidavits by experts supporting this conclusion.  See Moeller v. Cassedy, No. 4:03MC7-SPM, 2006 WL 566494, at *3 (N.D. Fla. Feb. 8, 2006) (finding that $301.76 per hour was a reasonable rate for attorneys in a suit brought pursuant to § 517.301).  The Court also finds that the requested rate of $100 per hour for Investors' paralegals is a reasonable rate.  See Wachovia Sec., LLC v. Fink, No. 07-80575-MC, 2009 WL 1911700, at *3-4 (S.D. Fla. July 1, 2009) (adopting magistrate judge's report and recommendation which found that $90 per hour was a low rate for paralegals in case brought before the NASD and decided in January 2007).  The total awards, without a contingency multiplier, are therefore $295,749 in attorneys' fees and $8,700 in paralegal fees.

### d.      Whether a Contingency Fee Multiplier is Warranted

Next the Court must determine whether a contingency fee multiplier is warranted.

14

The factors relevant to this analysis are "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in <u>Rowe</u> are applicable, especially, the amount involved, the results obtained, and the type of fee agreement between the attorney and his client." <u>Quanstrom</u>, 555 So.2d at 834. "[T]he critical factor . . . [is] the party's difficulty in finding counsel without risk-enhancement . . . [and] there should be evidence in the record" to support such a finding. <u>Bell v. U.S.B. Acquisition Co., Inc.</u>, 734 So.2d 403, 409 (Fla.1999) (internal citations and quotation marks omitted). "A primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it." <u>Id.</u> at 411.

As to the first factor, Brokers argue that a contingency fee arrangement was not necessary to obtain counsel in this case. (Brokers' Mem. Law 38-42.) They argue that Investors' initial attorneys actively solicited Investors and other customers of Respondents to be clients, that the large amount of damages sought in this case was a significant incentive for attorneys to take their case, and that the key Investors were very wealthy and could easily afford to pay counsel. (<u>Id.</u>) Investors' attorneys contend that any solicitation of their clients by prior counsel is irrelevant to what the market required in this case. Yet this solicitation—whether legal or not—does tend to show that at least some attorneys thought Investors were attractive clients, even if these attorneys assumed a contingency multiplier would be available to them. Investors also argue that a contingency fee agreement was necessary due to the difficulty and complexity[7] of the

---

[7] In order to prove Respondents manipulated the price of their stocks Investors obtained Respondents' electronic trading records and hired experts to analyze the data, as discussed *infra*. Investors submitted 71

case and the risk of non-payment. Indeed Investors allege that D.H. Blair closed its doors in April 1989, that Investors commenced collection proceedings against Brokers after the Court entered judgment against them in July 2007, and that Investors settled their claim against Brokers in September 2009. Other courts in Florida have found that contingency fee multipliers are warranted in securities fraud cases such as this. See Olde Disc. Corp., 800 So.2d at 668 (Pleus, J., concurring) (concurring in judgment affirming lower court's ruling that a contingency fee multiplier was warranted in case brought pursuant § 517 and listing several reasons why, including difficulty of proving liability, rigorous defenses, time-consuming nature of arbitration, and the paucity of competent attorneys to take such cases). Although it is unclear why Investors' original attorneys ceased representing them, the Court finds that given the complexity of the case and the substantial risk of non-payment a contingency fee multiplier was necessary to obtain counsel in this case.

As to the second factor, Investors maintain that the risk of non-payment could not reasonably have been mitigated (Decl. Mark A. Tepper Supp. Arb. Claimants' Mot. Post-Arb. Att'y's Fees Costs ¶ 19e), although they do state that they named D.H. Blair Investment Banking Corp. and J. Morton Davis Investment Banking as respondents in the arbitration partly for this reason. Brokers argue that Investors could have mitigated the risk of non-payment by accepting a settlement offer made several weeks prior to the arbitration. Brokers' argument is belied by the fact that no settlement offer would have been made if Investors had not retained counsel, and the Court concludes that this factor does not weigh against the application of a multiplier.

---

exhibits during the 11 day trial and presented 4 witnesses, including 3 expert witnesses. Although Respondents pled guilty in related criminal proceedings regarding securities accounts not in evidence, they militantly defended themselves, presenting 7 witnesses, including 2 expert witnesses, raising choice of law issues, statute of limitations defenses, and other factual defenses. Respondents also submitted several motions—in addition to the post-arbitration litigation—including two motions to dismiss.

16

Third, the Court finds that the Rowe factors also justify application of a multiplier. Although Investors initially sought a large amount of damages—$2,100,000 in compensatory damages and much more in disgorgement of commissions and punitive damages—this was a complex case with a significant risk of non-payment which Investors' attorneys successfully litigated on a contingent basis. A multiplier is justified in these circumstances in order to provide parties such as Investors with competent counsel.

The appropriate amount of a multiplier depends on how likely success was at the outset of the case. Quanstrom, 555 So.2d at 834. Because the Court concludes that success was unlikely at the outset of the case given the difficulty of proof in such cases and Respondents' vigorous defense, it may apply a multiplier between 2.0 and 2.5. Id. The Court concludes that a multiplier of 2.25 is appropriate for both the award of attorneys' fees and the award of paralegal fees. See State Farm Mut. Auto Ins. Co., 41 So.3d at 296-97 (finding that a contingency multiplier applies to awards of paralegal fees). The application of a 2.25 contingency multiplier yields the following amounts which are awarded to Investors:

**Attorneys' fees: $295,749 x 2.25 = $665,435.25**
**Paralegal fees:      8,700 x 2.25 =    19,575.00**
**Total                          = $685,010.25**

### III.    The Amount of Costs

The Court's award of costs may include fees to experts, including experts who provided expertise regarding the reasonableness of Investors' request for attorneys' fees. Travieso v. Travieso, 474 So.2d 1184, 1186 (Fla.1985). Investors' employed six experts. First, James L. Rothenberg *inter alia* reviewed and analyzed securities transactions in

Respondents' electronic database, testified at and was present during every day of the arbitration, at a total cost of $53,222.61. Second, Brian Walder examined the relevant securities accounts and transactions in order to determine the damages suffered by Investors, and testified at trial, for a total cost of $8,744.20. Third, William F. Jordan was hired as an accountant to review Walder's reports for, *inter alia*, accuracy and reliability, and to prepare some arbitration exhibits and summaries of damages. His work cost a total of $8,203. Fourth, Alon Israely established and maintained a computer database of Investors' transactions that could be used by the other experts. His work cost a total of $22,367. Fifth, Robert W. Pearce submitted a Declaration regarding the reasonableness of the fees claimed by Investors' attorneys from January 4, 2002 to June 6, 2003, including the fees incurred by the other experts discussed *supra*. His work cost a total of $2,700. Sixth, Neil Rose submitted a Declaration regarding the reasonableness of the fees claimed by Investors' attorneys from June 7, 2003 to October 12, 2006. His work cost a total of $4,200.

The Court finds that these fees are largely reasonable. It rejects Brokers' contention that Rothenberg's presence during the duration of the arbitration was unnecessary, especially considering that Brokers' own securities expert witness was also present during this entire time. The Court agrees with Brokers, however, that some of Jordan's work was duplicative of the work completed by Walder. Investors themselves admit that Jordan spent time reviewing the accuracy of Walder's reports and ensuring that Walder's "methodology was sound from an accounting standpoint." (Investors' Reply Mem. 24.) The Court cannot simply accept Investors' contention that "Jordan was a necessary check and balance on Walder's work. There was not duplication." (Id.)

Accordingly, the Court finds that the requested costs incurred by Jordan for $8,203

should be reduced by 15% or $1230.45, for a total of $6,972.55.  The Court also finds

that the costs incurred by Pearce and Rose should be reduced.  A substantial portion of

the Declarations filed by both Pearce and Rose in fact are verbatim quotations from

Tepper's own Declaration, and Rose's Declaration largely mirrors Pearce's Declaration.

These Declarations mostly consist of recitations of the history of the case along with

unsupported statements regarding the reasonableness of the hours expended on the case

by Investors' attorneys and the reasonableness of their rates.  The Court finds that the

costs incurred by Pearce and Rose should each be reduced by 75%, or $2,025 and $3,150,

respectively, for totals of $675 and $1,050, respectively.

Brokers make two final objections to Investors' claims for costs.  First, Brokers

argue that Investors did not need transcripts of the arbitration because audio tapes were

available.  The Court rejects this argument and finds that the costs for the transcripts shall

be awarded.  Second, Brokers argue that Investors should not have incurred costs for

serving a subpoena on a witness that agreed to appear voluntarily.  Investors allege that

they had no knowledge that the witness may have agreed to appear voluntarily, however,

and thus the Court finds that Investors may recover this cost.  The total amounts of costs

awarded by the Court are as follows:

| | |
|---|---|
| **Expert James L. Rothenberg:** | **$53,222.61** |
| **Expert Brian Walder:** | **8,744.20** |
| **Expert William F. Jordan:** | **6,972.55** |
| **Expert Alon Israely:** | **22,367.00** |
| **Robert W. Pearce:** | **675.00** |
| **Expert Neil Rose:** | **1,050.00** |
| **Transcripts:** | **4,431.55** |
| **Service of Process:** | **140.01** |
| **Total:** | **$97,602.92** |

**IV.     Effect of the Settlement on the Court's Awards of Attorneys' Fees and Costs**

On July 31, 2007 the Court entered a joint and several judgment against D.H. Blair & Co., Inc., Wood, and Palagonia for $1,412,792.47 plus post-judgment interest to accrue at the rate specified in 28 U.S.C. § 1961. (See Docket Entry No. 50.) As noted *supra*, Investors subsequently settled its claims with D.H. Blair & Co., Inc. and Kenton E. Wood but not with Palagonia. (See Letter from Mark A. Tepper to the Honorable Richard Owen, Mar. 16, 2010 Ex. A.) Accordingly, although the judgment remains outstanding against Palagonia, he is entitled to a credit for the amount of the settlement between the other parties. See N.Y. Gen. Oblig. Law 15-103. As part of the settlement Brokers paid, *inter alia*, $513,000 towards the judgment in this case and $577,927.37 towards Investors' Motions for costs and attorneys' fees. Accordingly, Palagonia is entitled to credits in these amounts.

**Conclusion**

Investors' Motions for attorneys' fees and costs are awarded to the extent indicated above. They may recover these amounts from Palagonia, minus the credit he is entitled to due to Investors' settlement with Brokers. This opinion resolves Docket Entries Nos. 28 and 40.

SO ORDERED.

October 26, 2010

_____
RICHARD OWEN
UNITED STATES DISTRICT JUDGE